UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMASINO, LUIGI                       JURY TRIAL DEMANDED
    Plaintiff

v.

YALE NEW HAVEN HOSPITAL
    Defendant

# COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is an action to redress the deprivation of rights secured to the Plaintiff by the Constitution and laws of the United States and the State of Connecticut. Defendant has violated and Title VII of the Civil Rights Act of 1964, as amended and Connecticut General Statutes § 46a-60(4).

## II. JURISDICTION AND VENUE

2. This court has jurisdiction of this controversy by virtue of Title VII of the Civil Rights Act of 1964, as amended and 42. U.S.C. 2000e et seq. This Court has subject matter jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. Section 1332. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1392 and because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Connecticut.

1

IV.   STATEMENT OF FACTS

3.   Plaintiff is Luigi Amasino, who resides at 59 Savoy Street, East Haven, Connecticut.  Plaintiff is a Caucasian American male of Italian heritage/ethnicity. Plaintiff is a naturalized U.S. citizen, having been born in Italy.

4.   Plaintiff's place of birth is on his application from when he was initially hired. Additionally, Plaintiff had multiple conversations with all lieutenants that he was born and raised in Italy and moved to the United States during his adolescent years.

5.   Plaintiff's head supervisor, Nicholas Proto, was also aware due to numerous conversations. Particularly, he made mention of Plaintiff's name being very Italian and bringing him back wine from Italy the next time Plaintiff visit his family and hometown in Italy.

6.   The Defendant is Yale New Haven Health, whose principal place of business is University Hospital whose business address is 20 York Street New Haven Connecticut.

7.   Plaintiff was been employed for 6 years as a senior patrol officer for Yale New Haven Hospital in New Haven, Connecticut.

8.   On June 20, 2024 Plaintiff was terminated by letter from Yale New Haven Health. The reason given was "inability to meet the performance requirements of position as Senior Patrol Officer."

9.   On May 26, 2024 Plaintiff was involved along with a group of protective services offices in responding to a call regarding a patient who we had been informed needed to be placed in four-point restraints.  As Plaintiff approached the patient, along with five others, the patient punched him in the face.  Plaintiff responded by twice striking the patient in the torso, using approved methods to subdue him.

2

10. Plaintiff's response to the patient was based in part upon the fact that this was a psychiatric patient who had already refused to be re-directed by staff thereby requiring security to become involved. Secondly, when the patient struck Plaintiff, he could have reached for and obtained his service revolver, further endangering others and himself.

11. The patient was ultimately subdued and placed in the restraints.

12. Plaintiff went through the dispute resolution process as he was not in agreement with the termination.

13. Notably, none of the individuals reviewing Plaintiff's termination have any experience in law enforcement or security nor do they have specialized training in policing tactics and deescalation.

14. It was not explicitly stated which specific code of conduct from the "YNHHS' Employee Conduct and Correction Action Policies" that Plaintiff violated that led to immediate termination without other disciplinary measures that his peers who engaged in similar offenses have been given.

14. Following Plaintiff's meeting with Dean Caruso on July 12 th 2024, the letter dated July 19th , 2024 stated his perception and interpretation of events following a review of the situation but did not explicitly provide a reason for the termination.

15. Caruso stated that Plaintiff did not use proper de-escalation techniques despite having no law enforcement training, no direct patient care experience, and not being at the situation in question.

16. Still, he did not state why Plaintiff was not afforded the opportunity for additional training that his peers have been provided for similar offense.

3

17. Following Plaintiff's meeting with Michael Holmes on August 2nd, 2024, the letter dated August 14th, 2024 stated: "I find that you did not follow proper de-escalation protocol in entering a room of a visibly agitated patient and in positioning yourself within striking distance of the patient."

18. Following Plaintiff's meeting with Dr. Heilpern on August 26, 2024, the letter dated September 3, 2024 stated: "your approach to the situation does not align with the training you received as a YNHH Protective Services Officer and did create an unsafe environment for patient, yourself, and colleagues." During this meeting Dr. Heilpern did not know why Plaintiff was fired and asked him the reason for my termination.

19. Plaintiff's peers were reportedly given additional training as part of disciplinary action. However, we did not receive any proof of this or what additional training this entails. Also, it was not stated why Plaintiff was not afforded the opportunity for additional training whereas his peers were provided the opportunity for other disciplinary infractions.

20. In February of 2023, the Vice President of Behavioral and Emergency Services sent out an email to staff regarding an incident at the psychiatric hospital where there was a patient assault on a clinical staff and several protective service officers responded.

21. The email referenced our Use of Force Policy and then explicitly stated in the email: "While their protocol emphasizes using the least amount of force in any given situation, the officer must often make split-second decision based on their assessment of risk of serious injury or death to the individuals involved in event. This includes a decision on the most appropriate type of force." It goes on to state that should anything

beyond verbal need to be used then there may be additional education and training. Plaintiff was not afforded this opportunity.

22. Plaintiff had never been given a poor performance rating and even received an award at a ceremony in October of 2022.

23. In a bulletin from Defendant it was stated that "On July 30, Mastriano, Verni, **Amasino** and Brano responded to a shooting on Howard Avenue, near the Yale New Haven Children's Hospital Emergency Department. They found a 13-year-old shooting victim in a car in the ED parking lot. Brano took the victim into the ED while Verni tried to speak to the driver. The driver sped off, striking Verni. Protective Services notified and provided video footage to New Haven Police to help their investigation."

24. Despite Defendant's claim that Plaintiff used improper techniques, the Use of Force Policy, Reasonable Use of Force is defined as: "Based on training and experience, action that is found to be suitable to the occasion. The use of force is reasonable when it is not more than a reasonable officer would use when viewed from the perspective of the officer at the time and place and in light of the circumstances known to the officer at the time."

25. Following this incident, Plaintiff received text messages from the lieutenant on duty that night, Patrick Bengston, commending his efforts and stating that he and another lieutenant, Jim Burr, would have acted in a similar manner. He stated: "everyone has said you acted in an appropriate manner that took control of the situation and maintained composure to avoid further escalation. Jim Burr said he would have done the exact same.

26. Defendant contended that it "provides its Protective Service Officers with force training and approved de-escalation techniques to minimize risks and maintain a high level of safety."

27. Plaintiff was never provided with this training as a means of discipline as his peers were provided with training for their infractions.

28. There are numerous other hospital security officers who are comparators to Plaintiff, who committed the same, similar, or worse offenses but who were not disciplined.

    A. Officer Elliot Rosa (Hispanic male, non-Italian) was involved in an incident with a violent patient in the Adult ED located on York Street Campus. Due to the level of violence, this officer had to physically bring this patient down to the ground. This patient took his cell phone and smashed it into the officer's head causing a severe laceration requiring sutures. However, during this incident with the assistance of other officers they were able to gain control of this patient.

    B. Officer Joseph Jackson (Black male, non-Italian) had an incident in the CIU located on York Street Campus. Upon his arrival, a very combative, aggressive female was being physical with medical staff. She had run out of her room throwing a hard plastic water jug filled with ice at the officer. Officer Jackson immediately took her to the ground to stop the violent behavior and during his struggle she bit or attempted to bite his hand. The patient alleged she was punched in the face prompting an investigation to be conducted. However, Officer Jackson did not miss one day of work and continued to work his full duty work week.

C. Officer Tony Dawson (Black male, non-Italian) was dispatched to Winnie One Yale Psychiatric Facility which is located in the Fitkin Building for a child psychiatric patient. Upon his arrival, the patient had become violent. Officer Dawson intervened by slamming the patient into the wall forcefully using his hand around his throat and pinning him into the wall. Medical staff were upset with Officer Dawson's reaction toward this child and made a formal complaint. Mr. Proto was involved in investigating; however, Officer Dawson was still able to work without being placed on administrative leave at any point or disciplined.

D. Officer Andre Velez (Hispanic male, non-Italian) was working the Adult ED on the SRC Campus. An incident with a combative female had occurred where this female started assaulting the officer. Lieutenant Dean Perkins was on scene as well and witnessed Officer Velez grab this female by the hair and rip her down to the ground. An investigation was conducted and Officer Velez received a written warning without being required to take any form of administrative leave during the investigation or receiving any other consequences.

E. Officer Roderick Jones (Black male, non-Italian) who is a CCO was caught numerous times sleeping by supervisors and medical staff. It was reported to superior Officer Jones; however, he was never was terminated, suspended, or received any form of discipline.

F. Officer Nick Donofrio (White male, non-Italian) was arrested numerous times for domestic violence and was charged with felony offenses. It was brought to the attention of Yale New Haven director Nicolas Proto. Instead of terminating this

individual Mr. Proto afforded him the opportunity to step down as an SPO and work as a CCO regular security making the same salary as he was making as an SPO.

G.     Officer John Deantone (White male, non-Italian) was working YPH when he closed fist punched an adolescent in the face in the psych unit LV2. The medical staff were upset over this incident, reported it, and it was investigated. This officer was out of work for just one week during the investigation by Human Resources. He returned back to work full Duty.

H.     Officer Kerry Deegan (White male, non-Italian) was working at YPH when he left a loaded fire arm in an unlocked lock box that he had forgotten to lock in the gun safe. The firearm was exposed to any and all visitors and patients in a first floor highly trafficked location by patient elevators. He received no formal discipline.

I.     Officer Allen Spaziani (White male) was working Observation unit located in the Fikin building basement on the overnight shift. While taking over the post at the beginning of his shift Officer Spaziani removed his firearm from his holster and fired the weapon. The bullet hit the right side of the desk leg which it can clearly see the wood was damaged and the bullet hit the floor causing a hole in the ground stopping the bullet from skipping and causing a patient or medical staff to be seriously injured which could have been deadly. This was a careless act. This officer attempted to lie about how he was placing the gun into the lock box which was located under the desk and said it slipped out of his hand and as he attempted to grab it that when the gun went off. This is impossible and made no sense. He was out of work for one day and came back to work full duty.

J.      Officer Bryan McCarthy (White male, non-Italian) was working Adult ED on York Street Campus during an incident in the CIU unit with a violent patient and he had other officers there as backup. Officer McCarthy was bit through his sneaker by this violent combative patient who was fighting him. Officer McCarthy stated to Plaintiff that once he was being assaulted he kicked and punched this individual numerous times and had informed Plaintiff that he wrote everything in his report. The individual is suing the officer; however, no investigation has been conducted by Nicolas Proto, and this officer is still working full duty.

K.      Officer Allen Spaziani (White male, Italian) was caught sleeping at the North Pavilion on York Street Campus by an employee and a photo was taken and sent to Lieutenant Jim Burr. This is a known fact because Plaintiff was working at SRC and was having coffee with LT. Burr when he received the photo and the phone call. LT. Burr contacted Spaziani via cell phone in front of Plaintiff and asked him if he was okay. Officer Spaziani attempted to deny the complaint until LT. Burr told him an off shift executive had taken a photo. He finally admitted to it and LT. Burr told him to stand and go for a walk if he was that tired. No discipline nor any write up were issued to this officer.

L.      Officer Phil Pelleter (White male, non-Italian) was working the Adult ED at York Street Campus. Officer Pelleter was working the 253 post which is the waiting room when at his post he overheard a Black female tech who works the ED talking to her co-workers about an incident she was involved with outside the job talking about the state police, at which time Officer Pelleter stated to her " why did you run because your

9

running from the Plantation". This female filed a complaint and a Human Resources investigation was done but no discipline by HR nor Nicolas Proto.

  M. Officer Teddy Montagna (White male, non-Italian) was involved in an issue where an off shift executive had ordered food which was delivered to 1450 Chapel Street, the main entrance to SRC hospital. After hours had passed, Officer Montagna decided to steal the food and proceeded to eat it. The investigation was completed by Tom Mendillo and Tom paid back the off shift executive out of his own pocket and no discipline was given to this officer who committed a crime.

  N. Officer Christopher Lyons (White male, non-Italian) was involved with a violent patient that started on one of the North Pavilion floors on York Street Campus which continued to the first floor of the north pavilion entrance. The violence patient went to strike Officer Lyons with paper work and his hands. Officer Lyons was not bladed nor did he allow time and distance and the patient then punched Officer Lyons in the face. Officer Lyons struck back with a closed fist punch to the patient's face. Officer Lyons was never disciplined for punching the patient in the face, not blading, or creating time/distance, or violating SVC training as Plaintiff was informed resulted in his termination.

  O. Officer Lance Helms' (White male, non-Italian) was involved in a major incident that occurred in the vestibule of the main entrance of the Adult ED located on York Street Campus. A Black male had entered the vestibule and laid down on the floor. Medical staff wanted this individual trespassed from the area. At this time officers were dispatched to the entrance of the waiting room upon their arrival Officer Mark Foster attempted to make contact with this individual. This individual became violent

and bit and latched on to Officer Foster's calf, at which time Officer Helmes' punched this individual in the head and face to stop him from assaulting Officer Foster. After this incident director Nicolas Proto and Tom Mendillo informed all of the employees in the department that they were allowed to strike someone in the face when their lives are in danger if needed and this is also stated in the policy.

29. Of these comparator employees, the only one other than Plaintiff who is Italian American is Spaziani. Plaintiff was the only naturalized employee Italian born.

30. Plaintiff filed a complaint of discrimination with the Connecticut Commission on Human Rights & Opportunities and the Equal Employment Opportunity Commission. On May 30, 2025 Plaintiff received a Release of Jurisdiction from the CHRO. Plaintiff has satisfied all requirements to exhaust his administrative remedies prior to bringing this action.

COUNT ONE:      TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
                (RACE/ETHNICITY DISCRIMINATION)

1-30. Paragraphs 1-30 in incorporated by reference and made paragraphs 1-30 of this Count One as if fully set forth here.

31. The acts of Defendant as alleged in paragraphs 1-10 demonstrate discriminatory treatment of Plaintiff based upon his race/ethnicity.

32. Plaintiff has been damaged thereby.

COUNT TWO:      CONNECTICUT GENERAL STATUTES 46a-60 (RACE /
                ETHNICITY DISCRIMINATION)

1-30. Paragraphs 1-30 in incorporated by reference and made paragraphs 1-30 of this Count Two as if fully set forth here.

31. The acts of Defendant as alleged in paragraphs 1-46 demonstrate discriminatory treatment of Plaintiff based upon his race/ethnicity.

32. Plaintiff has been damaged thereby.

COUNT THREE:    TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
                (NATIONAL ORIGIN DISCRIMINATION)

1-30. Paragraphs 1-30 in incorporated by reference and made paragraphs 1-30 of this Count Three as if fully set forth here.

31. The acts of Defendant as alleged in paragraphs 1-10 demonstrate discriminatory treatment of Plaintiff based upon his national origin.

32. Plaintiff has been damaged thereby.

COUNT FOUR:     CONNECTICUT GENERAL STATUTES 46a-60 (NATIONAL
                ORIGIN DISCRIMINATION)

1-30. Paragraphs 1-30 in incorporated by reference and made paragraphs 1-30 of this Count Four as if fully set forth here.

31. The acts of Defendant as alleged in paragraphs 1-10 demonstrate discriminatory treatment of Plaintiff based upon his national origin.

32. Plaintiff has been damaged thereby.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the following relief:

(1) Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for his unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon.

(2) Compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages.

(3) Restoration of all rights and privileges Plaintiff held prior to the discriminatory termination action taken against him.

(4) Attorneys' fees and costs; pursuant to 42 U.S.C. Section 1988.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all matters.

THE PLAINTIFF
BY:/s/*Josephine S. Miller*
Josephine S. Miller, Fed Bar ct23709
130 Deer Hill Avenue, Unit 13
Danbury, CT. 06810
Tel: (203) 512-2795
Email: jsmillerlaw@gmail.com